IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LAURIE A. TAYLOR,

                                   Plaintiff,
      v.                                                                                       OPINION and ORDER

ANDREW M. SAUL,
Commissioner of Social Security,                                              20-cv-580-jdp

                                 Defendant.

Plaintiff Laurie Taylor seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding her not disabled under the Social Security Act. She contends that administrative law judge (ALJ) Michael Schaefer erred in three ways: (1) by discounting Taylor's subjective complaints; (2) by improperly evaluating the medical-opinion evidence; and (3) by failing to adequately support his assessment of Taylor's ability to lift, carry, stand, and walk. The court agrees that these issues require remand, but Taylor hasn't shown that she is entitled to an order directing an award of benefits as she requests. The hearing scheduled for April 13, 2021, is canceled.

ANALYSIS

Taylor applied for benefits in early 2018, alleging that she was disabled as of April 1, 2018. Her claims were denied initially and on reconsideration. Taylor requested a hearing, which the ALJ held on September 18, 2019. The ALJ found that Taylor suffered from the severe impairments of lumbar spine disorder, mild osteoarthritis/degenerative joint disease of

the bilateral hips, and left shoulder dysfunction. R. 22.[1] He concluded that Taylor had the residual functional capacity (RFC) to perform light work with additional physical and environmental restrictions. *Id.* Relying on the testimony of a vocational expert, the ALJ concluded that Taylor was unable to perform any past relevant work but could work as a marker, informational clerk, or office helper, jobs that were sufficiently available in the national economy.

On appeal, the court's role is to determine whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). This is not a high standard, requiring only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* But the ALJ must "build an accurate and logical bridge" between the evidence and his conclusions. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal quotation marks omitted).

## A. Subjective complaints

Taylor contends that the ALJ didn't sufficiently justify his decision to discount her subjective complaints. The ALJ's credibility determination is entitled to significant deference, warranting remand only if it is "patently wrong"—that is, if it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008) (internal quotation marks omitted). The ALJ noted Taylor's subjective complaints of pain in her neck, middle back, low back, and hips; arthritis in her hands and elbows; and ringing in her ears. R. 25. He gave two reasons for discounting Taylor's subjective complaints: (1) they were inconsistent with her

---

[1] Record cites are to the administrative transcript, located at Dkt. 17.

daily activities; and (2) they were inconsistent with the objective evidence in her medical record.

First, the ALJ said that Taylor's subjective complaints were inconsistent with Taylor's statements in her function reports that she was able to perform several basic activities of daily living. R. 25. It's not clear what weight, if any, the ALJ placed on Taylor's activities. The ALJ said that he did "not place great weight" on Taylor's ability to perform her daily activities because reviewing courts "have repeatedly stated that the performance of daily activities . . . is not necessarily indicative of the ability to maintain full-time competitive employment." R. 25; *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (noting that in performing her daily activities, "a person has more flexibility in scheduling [daily activities] than [job activities], can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer"). But the ALJ cited Taylor's activities, so he apparently considered them to some degree. And if the ALJ considered them at all, he had to evaluate them fairly and explain the basis for his conclusions.

The ALJ ignored the significant limitations that Taylor reported in performing the activities that the ALJ cited as evidence of her capabilities. For example, he noted that Taylor could cook, clean, and shop. But he didn't address Taylor's statement that she must sit down and apply ice a few times while cooking if she cooks a large meal, R. 267, or her statement that she mostly makes "quick microwave meals" because "sitting at the table [and] cutting up chicken causes [her] pain to be unbearable into the next day," R. 288. He didn't address Taylor's statement that she had gone from dusting, vacuuming, and cleaning the bathroom every week to once every month or two, and that doing so now took up most of a day, with breaks for lying down and applying ice, R. 267–68. Nor did he address Taylor's statement that

3

she shops only once per month for 15 to 30 minutes, often asking a friend to shop for her because she cannot walk very long in the store, R. 268.

The ALJ also noted that Taylor cared for her handicapped partner until "she broke up with him and he moved out." R. 25. But he didn't address her statement that she had become unable to care for him because of her limitations, R. 276. And he noted that Taylor worked, but he didn't address the struggles she reported in doing so. She reported that she could sit for only 15 minutes at a time in a six-hour workday in the Salvation Army food pantry, and she had to constantly cycle between sitting, standing, walking, and lying on tables and counters to relieve her pain. R. 275. She also said that volunteers often performed her job duties for her because of her limitations. R. 290.

The ALJ's second reason for discounting Taylor's reports of her subjective symptoms was that her complaints were "not consistent with the medical evidence of record." R. 25. The ALJ said that the medical evidence would support limiting Taylor to light work. *Id.* This reason followed a two-page summary of Taylor's medical-record evidence, R. 23–25, but the ALJ didn't actually identify what medical evidence was inconsistent with Taylor's subjective complaints anywhere in the opinion.

The commissioner identifies a few observations from the ALJ's review of the evidence that could support the ALJ's credibility determination, such as medical imaging showing mostly mild degenerative changes in Taylor's neck, spine, and hips; a full range of motion in her cervical spine; normal neck flexion; and full grip strength. *See* Dkt. 22, at 4–5. The ALJ also noted that a nurse practitioner didn't adjust Taylor's pain medication again after switching her from Tramadol to oxycodone, and he cited a note that Taylor restarted physical therapy in 2019 but quit after one session.

But the ALJ also described evidence that would support Taylor's subjective complaints. For example, Taylor underwent two sessions of diagnostic medial branch blocks to treat her back pain in 2017. The first session gave her complete relief for less than one day, and the second gave her no relief whatsoever. R. 23. Another medical provider concluded that Taylor's "back and hip tightness and weakness appeared to be large contributing factors for her pain." R. 24. And the ALJ cited an agency consultive examiner, Dr. Steven Long, who described Taylor as "uncomfortable appearing" during his examination, noting that she had to get up several times to walk around the room. *Id.* Long noted that Taylor "was slow to stand from the chair and exam table," "favored her left side with her gait and . . . walked with the right shoulder down," "was able to tandem walk but lost balance frequently while doing it," and "was able to squat, but rose slowly from the squat." *Id.* at 24–25.

The ALJ was required to "consider the entire case record and give specific reasons for the weight given to [Taylor's] statements." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (quoting SSR 96–7p). The ALJ described the medical evidence, then stated conclusorily that her subjective complaints weren't consistent with that record. That's not enough. *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008).

The ALJ's reasons for discounting Taylor's subjective complaints are not supported by a fair assessment of the evidence in the record or adequately explained. Remand is warranted to reconsider Taylor's credibility.

## B. Medical-opinion evidence

Taylor challenges the ALJ's handling of opinions from two medical sources concerning her physical abilities: (1) Long, the consultant who examined Taylor on behalf of the agency; and (2) nurse practitioner Denise Toperzer, who treated Taylor. The ALJ concluded that both

5

opinions were inconsistent with Taylor's medical record, and thus he found them "not entirely persuasive." But again, he didn't identify the purported inconsistencies. "When the court is left to guess what the administrative law judge was thinking, remand is the likely result." *Hart v. Astrue*, No. 08-cv-07-bbc, 2008 WL 3456864, at *10 (W.D. Wis. Aug. 11, 2008).

### 1. Steven Long

Long said that Taylor could lift and carry up to 20 pounds, that she could sit or stand for no more than 10 minutes at a time, and that she could walk no more than one block without resting. The ALJ said that Long's sitting, standing, and walking restrictions weren't objectively supported by Long's own examination. But Long expressly stated that Taylor was "uncomfortable appearing" during his examination and that she got up to walk around the room several times. R. 397. Long also observed that Taylor was slow in standing from her chair, from the examination table, and from a squatting position; that she walked with an altered gait with her right shoulder down; and that she frequently lost her balance while tandem walking. R. 397–98. These observations were consistent with Long's restrictions, and the ALJ noted them in summarizing Long's examination, but he didn't address them in evaluating Long's opinion.

The ALJ also discounted Long's sitting, standing, and walking restrictions because they were "not supported . . . [by] an explanation," R. 26, noting Long's observation that "[i]t is near impossible to associate degree of arthritis with degree of pain," R. 398. Long's observation is consistent with the principle, recognized in many appellate decisions and in Social Security regulations, that subjective symptoms cannot always be verified with objective medical evidence. *See Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006); 20 C.F.R. § 404.1529; SSR 16-3p. But the ALJ used Long's appropriate observation as a reason to discount Long's

6

assessment of Taylor's symptoms. An ALJ can discount a doctor's opinion "if it appears to be based on a claimant's exaggerated subjective allegations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). But the ALJ may not simply reject the opinion because is not corroborated by objective medical evidence, which is apparently what the ALJ did here.

The ALJ identified no other reasons to question Long's sitting, standing, and walking restrictions. On remand, the ALJ must reassess Long's opinion.

**2. Denise Toperzer**

Toperzer said that Taylor could lift no more than five pounds and limited her to less than sedentary exertion. Toperzer assessed Taylor's abilities on two forms: (1) a return-to-work form; and (2) a "Wisconsin Works" or "W-2" form.[2]

In the return-to-work form, Toperzer opined that Taylor should be restricted to very light work with a five-pound lifting limitation. R. 568. The ALJ said that this opinion was "not persuasive, as it is an incomplete assessment that only addresses lifting." R. 26. The ALJ also said that there was "no explanation or support offered for such a dramatic limitation." *Id.* But he didn't consider whether this limitation was consistent with the notes from Toperzer's multiple examinations of Taylor. *See, e.g.*, R. 571; R. 609. For example, on November 30, 2018, Toperzer examined Taylor for her complaints of pain in her neck, left shoulder, lower back, and hips. R. 571. She observed that Taylor was "up and about moving and adjusting her position quite frequently." *Id.* She diagnosed Taylor with chronic bilateral low back pain

---

[2] Neither the ALJ nor the parties describe what Wisconsin Works is, but the Wisconsin Department of Children and Families website describes it as "a program that provides employment preparation services, case management and cash assistance to eligible families." Wisconsin Department of Children and Families, *Wisconsin Works (W-2)*, https://dcf.wisconsin.gov/w2/parents/w2.

7

without sciatica, chronic neck pain, and myofascial pain, and she changed Taylor's pain medication from tramadol to oxycodone because the tramadol hadn't been effective. *Id.* And on January 15, 2019, she noted that Taylor's oxycodone had become less effective in managing her pain. R. 608. She noted that Taylor "again appear[ed] very uncomfortable" during her examination, was "tight to the neck," was unable to fully elevate her left arm, experienced pain when rotating her left arm, had weakened grasp strength on the left side, and continued to complain of pain in her spine, left arm, left shoulder, lower back, and hips. R. 609. The ALJ didn't address any of this evidence.

The ALJ also stated that Toperzer's five-pound lifting restriction was inconsistent with Taylor's hearing testimony that her "weight limit" was a gallon of milk. *See* R. 26, 64–65. The ALJ didn't say how much a gallon of milk weighs, but the court takes notice that a gallon of milk weighs about 8.6 pounds.[3] Taylor didn't testify about the frequency at which she could lift a gallon of milk. And that is significantly less weight than the frequent lifting of up to 10 pounds and occasional lifting of up to 20 pounds required by light work. The difference between five pounds and the weight of a gallon of milk isn't a good reason to discount Toperzer's opinion.

The Wisconsin Works form asked Toperzer to summarize Taylor's history and abilities. Toperzer limited Taylor to less than sedentary exertion, said that she would be absent from work more than three times per month, and restricted her to never reaching, among other restrictions not at issue here. R. 594–98. The ALJ said that this form wasn't supported by "actual, detailed physical exams" and said that Taylor had a "normal examination the day the

---

[3] United States Department of Agriculture, *Price Spreads from Farm to Consumer*, https://www.ers.usda.gov/data-products/price-spreads-from-farm-to-consumer/documentation/.

form was filled out." R. 26. But Toperzer had physically examined Taylor on multiple occasions, and the ALJ failed to explain whether the results of these examinations were consistent with Toperzer's restrictions. And in the examination Toperzer performed on the day she filled out the return-to-work form, she said only that Taylor had "[n]o *new* joint aches or pains." R. 634 (emphasis added). It's reasonable to infer from this statement that Taylor's old joint aches and pains were still present.

The ALJ also said that Toperzer's reaching restrictions were inconsistent with Taylor's hearing testimony "that she can reach in all directions, but . . . overhead reaching would be painful." R. 26. The form prompted Toperzer to rate Taylor's manipulative abilities in three broad categories, one of which was "Arm: Reaching (include overhead)." R. 596. Toperzer marked that Taylor could never reach with either arm. But the form didn't ask Toperzer to give specific ratings for different types of reaching, and it wasn't reasonable for the ALJ to discount Toperzer's opinion simply because she failed to provide additional details that weren't requested on the form.

On remand, the ALJ will have to reassess Toperzer's opinions.

## C.  Taylor's RFC

Taylor says that the ALJ failed to support his conclusion in the RFC that Taylor could meet the demands of light work, which would include the capacity to lift up to 20 pounds and frequently lift and carry up to 10 pounds, 20 C.F.R. § 404.1567(b), and to stand and walk up to six hours in an eight-hour workday, SSR 83–10. The deficiencies in the ALJ's assessment of Taylor's subjective complaints, Long's opinion, and Toperzer's opinions ultimately affect the validity of the RFC that the ALJ ascribed to Taylor.

Two state-agency consultants who reviewed Taylor's records opined that she was able to perform medium work. But the ALJ said that these opinions weren't "fully persuasive" because they weren't "consistent with and supported by the substantial medical evidence," including additional evidence that the consultants hadn't reviewed. R. 27. The ALJ did not rely on these opinions to support his conclusions, so they provide no support for the RFC.

As for Taylor's lifting ability, the ALJ credited Long's statement that she could lift and carry up to 20 pounds because it was "consistent with and supported by the substantial medical evidence." R. 26. But the ALJ did not explain precisely why this statement was consistent with the record, nor did he explain why it was better supported than Toperzer's more restrictive assessment that Taylor could lift only five pounds. As for Taylor's standing and walking ability, the court has already concluded that the ALJ failed to justify his decision to discount Long's observations and restrictions in that area. The ALJ didn't cite any evidence showing that Taylor could stand and walk for six hours per day.

On remand, the ALJ will have to reevaluate Taylor's RFC in light of the reassessment of the other evidence in the case.

## D. Remedy

Taylor says that her record warrants instructions to the agency to award benefits. This remedy is within the court's power only in "unusual cases" in which "the relevant factual issues have been resolved and the record requires a finding of disability." *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018). Taylor's record doesn't meet this standard, as reflected by the wide range of opinions in the record assessing her as capable of performing anywhere between less than sedentary work, as Toperzer opined, and medium work, as the state-agency consultants opined. Taylor has shown that the ALJ didn't adequately support his conclusions,

but she hasn't shown that the more restrictive opinions were unquestionably superior to the less restrictive ones. So the court will remand the matter to the agency for further consideration.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of the Social Security Administration, denying plaintiff Laurie A. Taylor's application for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered April 12, 2021.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge